**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

```
JAMES C. CLAUSELL,             *
                               *
     Plaintiff,                *
                               *
vs.                            *     CIVIL ACTION 11-00202-B
                               *
MICHAEL J. ASTRUE, Commissioner *
of Social Security,            *
                               *
     Defendant.                *
```

**ORDER**

Plaintiff James C. Clausell ("Plaintiff" or "Clausell") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. On July 23, 2012, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 14). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. 15). Oral argument was held on August 7, 2012. Upon careful consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.   **Procedural History**

Plaintiff protectively filed an application for supplemental security income on January 14, 2008.[1] (Tr. 148-55). Plaintiff alleges that his alleged onset of disability date is November 19, 1975, but that his impairments have limited his ability to work since December 1, 2006, due to sickle cell anemia. (Id. at 95-96, 148, 156, 165). His application was denied at the initial stage (Id. at 95-101), and he filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 104-6). On October 29, 2009, Administrative Law Judge Ricardo Ryan held an administrative hearing[2], which was attended by Plaintiff and his non-attorney representative, Ella Ewing[3]. (Id. at 54-86, 124). On November 10, 2009, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 15-27). Plaintiff's request for review was

---

[1] On that same date, Plaintiff also filed an application for Disability Insurance Benefits. His application was denied because he did not meet the insured requirements. Plaintiff does not appeal that denial. (Tr. 156-8).

[2] A previous administrative hearing was commenced on August 13, 2009. However, Plaintiff's attorney had recently withdrawn from the case, and Plaintiff indicated that he wished to retain other counsel. As a result, the ALJ continued the hearing to afford Plaintiff an opportunity to obtain new counsel. (Id. at 87-94).

[3] Plaintiff points out that his representative at the hearing is incorrectly referred to as "Ms. Healey" throughout the transcript. (Id. at 6).

denied by the Appeals Council ("AC") on March 14, 2011.  (Id. at 1-6, 14).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

    A.    Whether the ALJ erred by failing to fully develop the record and to provide Plaintiff with a full and fair hearing?

    B.    Whether the ALJ properly assessed Plaintiff's credibility?

    C.    Whether the Appeals Council erred in failing to remand the case for proper consideration of newly submitted evidence?

## III. Factual Background

Plaintiff was born on November 19, 1975, and was age thirty-three (33) at the time of the administrative hearing conducted on October 29, 2009.  (Tr. 57, 148, 156, 165). Plaintiff testified that he has a 9th grade education and that he failed to complete the 10th grade due to being incarcerated. (Id. at 60).  Plaintiff has past relevant work ("PRW") as an assembly line worker.  (Id. at 80-1, 96, 171).

Plaintiff testified that he worked at Standard Furniture in Bay Minette, Alabama on three different occasions. According to Plaintiff, he was initially employed at Standard Furniture in 2001 for two and one-half months. Plaintiff indicated that he

was laid off because he no longer had a place to live in Bay Minette once his relationship with his girlfriend ended. (Id. at 64-6). Plaintiff stated that he was rehired at Standard Furniture a second time in 2003, that he worked there for a "couple of months," and that he lost his employment after being incarcerated for failure to pay restitution arising from a prior manslaughter conviction[4]. (Id. at 66-7). Plaintiff reported that he last worked at Standard Furniture in 2006. Plaintiff testified that he quit after two months due to his illness. (Id. at 63). Plaintiff further testified that he worked as a cook at Hardee's for a short period of time. Plaintiff reported that he left this job due to issues with transportation. (Id. at 69).

Plaintiff testified that he has had sickle cell anemia since birth and that the illness prevents him from working. (Id. at 71-2). Plaintiff reported that he experiences severe weakness and joint pain as a result of his illness. (Id. at 170, 180). According to Plaintiff, he experiences pain with indeterminable frequency and that the pain can last "from a couple hours, a day, a week or even go on for longer." (Id. at 72). He testified that he takes iron pills once daily, folic acid twice a day, and Lortab as needed for pain. (Id.)

---

[4] Plaintiff testified that he spent five years in prison as a result of the manslaughter conviction. (Id. at 60).

With respect to his daily activities, Plaintiff testified that he tries to exercise by walking 10 to 15 minutes, that he drives although his license has been revoked, that he reads books and draws, and that he spends most days at home with his wife. (Id at 59- 77).[5]

## IV.  Analysis

### A.    Standard Of Review

In reviewing claims brought under the Act, this Court=s role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[6]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding

---

[5] Plaintiff testified that he resides with his wife and her children, and that his wife  cleans, cooks, does laundry, and gets groceries. (Id.)

[6]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner=s decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

### B.   **Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. § 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. § 404.1520, 416.920.[7]

---

[7]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe
(Continued)

In the case <u>sub judice</u>, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 20, 2007, the application date, and that he has the severe impairment of sickle cell anemia. (Tr. 20). The ALJ found that Plaintiff does not have an impairment that meets or medically equals any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4.  (<u>Id.</u>) The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning

_____

impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant=s age, education and work history. <u>Id.</u> at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See also Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment.   (Id. at 20-1). Relying on the a functional assessment prepared by an Agency disability specialist, the testimony of the vocational expert ("VE"), and other evidence of record, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of light work. The ALJ further concluded that Plaintiff cannot perform any of his past work and that, considering Plaintiff's RFC and vocational factors, such as age, education and work experience, Plaintiff is able to perform other jobs existing in significant numbers in the national economy. (Id. at 22-23). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 24).

## **Medical Evidence**

The relevant evidence of record reflects that Plaintiff has been treated in the D.W. McMillan Memorial Hospital emergency department on several occasions in 2007, 2008, and 2009 for a number of symptoms including generalized pain, abdominal pain, and pain in his legs. (Id. at 212-391). During Plaintiff's November 29, 2007 visit, he reported exhaustion, abdominal pain, and "blacking out." On exam, Plaintiff appeared in moderate distress. He was diagnosed with complications from sickle cell anemia and was directed to increase fluids, take folic acid, and

to take medications as directed. He was further directed to return the following day for a gallbladder ultrasound.(Id. at 221-28).

During a December 22, 2007 visit to the emergency department, Plaintiff reported pain on a level of 10 out of 10, burning on the right side of his back, loss of appetite, and nausea. On exam, Plaintiff was oriented times three and had a depressed affect. He had no extremity tenderness or pedal edema. A MRI of Plaintiff's chest and abdomen revealed mild hyperexpansion of the lungs, but no pneumothorax or pleural effusion. Small calcifications over the left lateral portion of the central pelvis, that were most likely phleboliths, were also noted. (Id. at 216-7). Plaintiff's diagnosis was sickle cell anemia, and upon his discharge the same day, he was directed to push fluids, take medications for pain, utilize an over-the-counter stool softener, and to follow up with Dr. Eddins or the emergency room at Monroeville hospital. (Id. at 212-20).

Plaintiff continued to seek treatment through the emergency room for generalized pain resulting from sickle cell crises and other related ailments. The medical records reflect treatment January 13, 2008 (Id. at 257-64), March 3, 2008 (Id. 265-72), March 31, 2008 (273-6, 284-93), May 23, 2008 (Id. at 295-301), June 4, 2008 (Id. at 302-14), July 20, 2008 (Id. at 315-334), August 4, 2008 (Id. at 335-41), August 22, 2008 (Id. at 342-56),

September 6, 2008 (Id. at 357-64), September 22, 2008 (Id. at 366-76), December 1, 2008 (smoke inhalation) (Id. at 377-83), January 26, 2009 (knee injury) (Id. at 277-83), and August 1, 2009 (Id. at 384-91). Plaintiff's MRIs, CT scans, and ultrasounds were routinely noted as normal, and treating emergency room physicians routinely attributed Plaintiff's pain complaints to sickle cell anemia. He was advised to take iron pills and folic acid, and prescribed tramadol and Lortab for pain.  He was also directed to follow up with Dr. Haynes or Dr. Eddins.

Plaintiff was treated by Charles Eddins, M.D. (hereinafter "Dr. Eddins"), at Doctors Clinic of Monroeville from at least November 27, 1991 to January 22, 2008. (Id. at 228-38). The record reflects that Dr. Eddins first noted Plaintiff's sickle cell trait in November 1991. (Id. at 230). In Dr. Eddins' treatment notes dated September 2005, he noted that Plaintiff was being treated by a sickle cell specialist in Mobile. (Id. at 234-5). During a visit on September 22, 2006, Plaintiff reported numbness in his left hand lasting at least three weeks and blood in his stool approximately three weeks earlier.  Plaintiff's physical exam was normal, and Dr. Eddins scheduled Plaintiff for a colonoscopy.  He also noted that attempts to schedule an appointment with a gastroneuroligst at USA Medical Center were unsuccessful because Plaintiff could not afford it. (Id. at

234).   A colonoscopy was performed on September 26, 2006. (Id.
at  231). External hemorrhoids were observed, but no mucosal
abnormalities, polyps, growths, etc. were noted.  (Id.)

Plaintiff was seen by Dr. Eddins on December 7, 2007, for a
check-up. The notes reflect that Plaintiff had an abdominal
ultrasound at the emergency room and that it was normal except
that an heterogeneous spleen was observed. Dr. Eddins encouraged
Plaintiff to follow-up with his sickle cell specialist. (Id. at
233).

On January 22, 2008, Dr. Eddins penned a handwritten note
confirming that Plaintiff "[h]as had SC disease (a form of
sickle cell anemia) since birth." (Id. at 232).

Plaintiff was admitted to Mobile Infirmary from January 19
to January 22, 2008, with complaints of left sided chest pain
which was described as a burning sensation. The treatment notes
reflect that Plaintiff has a history of sickle cell disease and
a history of palpitations, and that upon further evaluation,
Plaintiff's palpations were premature atrial complexes. On exam,
Plaintiff was alert and oriented times three and in no acute
distress. Plaintiff's right pinky finger was tender with
fluctuation and showed loss of range of motion.  A chest x-ray
revealed left lower lobe pneumonia, and a CT scan showed
consolidation versus scarring of left lower lobe. Plaintiff was
diagnosed with pneumonia. An echocardiogram was ordered to rule

out septic thrombi and blood cultures were obtained.  Plaintiff was provided Rocephin and Zithromax for pneumonia, morphine for pain, and Nexium and sequential compression devices for gastrointestinal prophylaxis and deep vein thrombosis, respectively. An incision on Plaintiff's fifth metacarpal (pinky finger) was drained, and the pus tested positive for Staph. Upon discharge, Plaintiff was in good condition and was given a good prognosis. He was directed to take folic acid, iron, and Levaquin twice a day. He was further directed to follow up with his primary care physician, with Dr. Johnson Haynes, and with an orthopedic surgeon. (Id. at 239-42).

Approximately one week later, on January 27, 2008, Plaintiff returned to Mobile Infirmary and reported left sided chest pain.   (Id. at 251-6). A chest x-ray was taken and compared to a study taken the prior week. The cardiac silhouette and mediastinal structures were normal in size and shape. New airspace opacity in the left lung base and a left pleural fluid collection were observed. The findings were noted as being highly suspicious for left basilar pneumonia, and clinical correlation was recommended. (Id. at 251). The treatment notes reflect that during Plaintiff's previous hospital admission on January 19, 2008 for lower lobe pneumonia, he was treated with intravenous antibiotics and upon discharge, he was instructed to complete a course of antibiotics; however, Plaintiff did not

have the prescription filled and did not complete the course of antibiotics. Plaintiff was thus treated with IV antibiotics and was provided morphine for pain and Zofran for nausea. He was discharged the following day.

The record contains a Physical RFC Assessment which was completed on January 27, 2007 by Petra Chnapekova-Simmons. (Id. at 243-50). While Ms. Chnapekova-Simmons is referenced as a medical consultant, as best the undersigned can discern, she is a disability specialist, or single decision maker with the Agency. Ms. Chnapekova-Simmons listed Plaintiff's diagnosis as sickle cell disease and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull for an unlimited amount of time. She further opined that Plaintiff has no postural, manipulative, visual, environmental, or communicative limitations. (Id.)

### Lay Evidence

Plaintiff's non-attorney representative, Ella Ewing, submitted a letter to the Appeals Council dated December 14, 2009. She opined that Plaintiff has been unable to perform any gainful work for years due to sickle cell disease and other complaints. She reported that he is unable to follow up with

treatment because he is without insurance or the proper finances. (Id. at 14).

Ms. Ewing also submitted to the Appeals Council on January 20, 2010, a letter signed by Adrienne Petite, who is referenced as a Case Manager Coordinator with Sickle Cell Disease Association of America – Mobile Chapter, Inc. In the letter, Ms. Petite asserts that Plaintiff is "routinely followed" by Dr. Johnson Haynes at the Sickle Cell Clinic, and further asserts that Plaintiff "has been unable to seek or secure employment recently due to issues associated with his condition." (Id. at 209-11)[8].

### 1.   Whether the ALJ erred in failing to fully develop the record and to provide Plaintiff with a full and fair hearing?

Plaintiff contends that the ALJ erred in failing to fully develop the record and to provide Plaintiff with a full and fair hearing by not ordering records from Dr. Johnson Haynes,

---

[8] Ms. Ewing also submitted to the Appeals Council a letter dated February 16, 2011, from Dr. Elizabeth Low, of the Brewton Medical Center. In the letter, Dr. Low states that Plaintiff is a patient under her care and that he is routinely followed by Dr. Johnson Haynes of the University of South Alabama Comprehensive Sickle Cell Clinic. She opined that Plaintiff is "unable to work due to his medical condition and the intermittent episodes he experiences. It is my medical opinion, that this patient is disabled, secondary to his medical condition." (Id. at 392).

Plaintiff's sickle cell specialist. According the Plaintiff, the ALJ improperly used a lack of evidence to determine that Plaintiff had failed to follow the prescribed course of treatment for sickle cell disease although the medical records put the ALJ on notice that Plaintiff was also being treated by a medical provider who is a sickle cell specialist. The Commissioner counters that Plaintiff is responsible for proving that he is disabled and for providing the medical documentation to support his claim. The Commissioner further contends that while the ALJ has a duty to develop a full and fair record, the record in this case was comprehensive and sufficient so that the ALJ was able to properly decide Plaintiff's disability status. As additional support for his contention, the Commissioner notes that Plaintiff's non-attorney representative reported that the record was complete.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and for producing evidence in support of his claim while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Comm. of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists even when the claimant is represented by counsel. Brown v. Shalala,

44 F.3d 931, 934 (11th Cir. 1995). Indeed, applicable Social Security regulations provide that the Commissioner will pay the reasonable cost of providing existing medical records the Commissioner needs or requests. Hargove v. Astrue, 2012 U.S. Dist. LEXIS 69821, *31 (N.D. Fla. Mar. 15, 2012). The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Strawder v. Astrue, 2011 U.S. Dist. LEXIS 122843, *20 (N.D. Fla. Aug. 8, 2011). However, "[t]here is no bright line test for determining when the administrative law judge has ... failed to fully develop the record." Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1052 (6th Cir. 1983). Rather, the determination depends upon the facts and circumstances of a particular case.

In this case, as noted above, Plaintiff claims the ALJ failed to fully and fairly develop the record because he did not seek the medical records from Dr. Haynes, a sickle cell specialist who provided treatment to Plaintiff. According to Plaintiff, the ALJ should have been aware of Dr. Haynes' treatment of him because Dr. Haynes was referenced in the medical records before the ALJ, and was mentioned by Plaintiff

during the administrative hearing.[9] Plaintiff further argues that the ALJ found that Plaintiff's credibility was diminished because he failed to follow prescribed treatment by not seeking the care of a sickle cell specialist, but this finding was based on the ALJ's mistaken belief that Plaintiff had not been treated by a sickle cell specialist. The relevant part of the ALJ's opinion reads as follows:

> The claimant's credibility is further damaged by his failure to follow the direction of his health care providers. The record shows that one of the claimant's treating physicians, Dr. Charles Eddins, referred him to a sickle cell anemia specialist in Mobile, Alabama on numerous occasions. (Exhibit 2F). The medical evidence on file contains no records from the sickle cell specialist or any other evidence that the claimant even attempted to follow through on the advice of Dr. Eddins....The claimant's failure to follow medical advice is not consistent with his allegations of disabling symptoms.

(Tr. 22).

Based upon the record before the Court, the undersigned finds that the ALJ failed to properly develop the record. The medical evidence reflects that on numerous occasions Plaintiff sought medical treatment for various symptoms and ailments

---

[9] At the administrative hearing, the ALJ questioned Plaintiff about who provided his prescription for Lortab tablets, and Plaintiff responded "Dr. Hines," which appears to be a reference to "Dr. Haynes". (Tr. 73, 78).

arising from his sickle cell condition; yet, the record is devoid of any medical evidence which sheds any light on the functional limitations, if any, arising from Plaintiff's condition. In his decision, the ALJ gave considerable weight to the opinion of a "[s]tate agency medical consultant who opined on February 7, 2008 that the claimant had the residual functional capacity to perform the full range of light work." However, upon review, it does not appear that the person who completed the residual functional assessment is in fact a medical professional of any sort.

Social Security Ruling 96-6p provides that findings of fact made by State agency medical consultants regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. SSR 96-6p. The Ruling also provides that the medical opinions of such consultants must be considered and that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f). A review of the record in this case does not establish that Ms. Petra Chnapekova-Simmons, the person who completed the RFC assessment, is a medical consultant whose opinion qualifies as a medical source opinion.

In fact, in various documents throughout the file, Ms. Chnapekova-Simmons is identified as a "disability specialist." (Id. at 177, 195). Traylor v. Astrue, 2010 U.S. Dist. LEXIS 23410 (M.D. Ala. 2010)("the referenced opinion, however, is not that of a physician; it is the opinion of the DDS disability examiner, Karen Wiggins. Her opinion is not, as the Appeals Council apparently believed, entitled to consideration as an expert medical opinion.")(internal citation omitted.); Foxx v. Astrue, 2009 U.S. Dist. LEXIS 80307 (S.D. Ala. 2009)("While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of examining sources, there is no evidence before the Court that Carol M. Davis, S.D.M., the person who completed the RFC assessment is a medical source whose opinion qualifies as a medical source.); Casey v. Astrue, 2008 U.S. Dist. LEXIS 47515 (S.D. Ala. June 19, 2008)(an RFC assessment completed by a disability specialist is entitled to no weight); Hall v. Astrue, 2007 U.S. Dist. LEXIS 95776 (S.D. Ala. Nov. 7, 2007) (holding that the opinion of a disability examiner "simply does not supply the substantial evidence needed to support the ALJ's determination").

In this case which involves a claimant with a documented history of treatment for sickle cell condition, the absence of medical evidence addressing the functional impairments, if any, from his condition necessitates reversal.  As noted supra, the ALJ accorded controlling weight to an RFC assessment that appears to have been authored by a person who lacks medical credentials. Thus, not only did the record omit any medical records from the sickle cell medical specialist who has treated Plaintiff, but there is no medical evidence regarding functional limitations, if any, arising from Plaintiff's condition.  In the absence of medical evidence of the functional limitations, if any, from Plaintiff's condition, the RFC assessment is not supported by substantial evidence. Accordingly, this case is reversed and remanded for further review as to this issue.

Because this issue is dispositive of this appeal, the Court need not consider Plaintiff's remaining arguments. Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

V.    **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is

hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **REVERSED** and **REMANDED**.

   **DONE** this **8th** day of **August, 2012.**

   _____**/s/ SONJA F. BIVINS**_____
   **UNITED STATES MAGISTRATE JUDGE**